**Mary Louise WILSON and Gary Lewis Wilson, Co-Defendants-Appellants,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 73A01–8708–CR–00205.

Court of Appeals of Indiana, First District.

July 14, 1988.

Rehearing Denied Aug. 25, 1988.

Warren R. Good, Good & Good, Shelbyville, for co-defendant-appellant Mary Louise Wilson.

Robert D. Jones, Morristown, for co-defendant-appellant Gary Lewis Wilson.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Gary Wilson and Mary Wilson appeal their convictions for neglect of a dependent, a class D felony. We affirm.

## FACTS

In June of 1986, Mary and her baby, J.W., began living with Mary's boyfriend, Gary, in his home. Mary began working the evening shift and therefore left J.W. with a babysitter until Gary could pick him up after work. Gary took care of J.W. in the evenings until Mary returned from work.

In July, when Mary took J.W. for a doctor's examination, the doctor noticed numerous bruises on the child's body and asked Mary about the cause of injuries. One of J.W.'s babysitters testified that J.W. always had bruises on his body. She and J.W.'s other two babysitters indicated that they never had struck or harmed J.W.

During the summer and fall of 1986, Gary often disciplined J.W. by spanking him. Mary and Gary had, occasionally, argued about the extent of force he utilized when spanking J.W., but Gary informed her that he would continue to spank the child until someone told him that spanking was an improper form of discipline. Gary also informed Mary that if she disapproved of his methods of discipline, she and J.W. could move out of his home. Mary did not move out, however. Gary admitted at trial that he once spanked J.W. so forcefully that he left a bruise in the shape of his hand on J.W.'s buttocks.

On October 1, Mary took J.W., then eight months old, to the Shelbyville Hospital after she and a friend had observed that J.W. had numerous bruises and was holding his head in an unusual manner. The examining physicians noticed bruises on J.W.'s ears, buttocks, arm, nose and chin. They also observed abrasions on the baby's fingers and toes as well as a circular, second degree burn on his buttocks. The doctors indicated that some of the bruises were several days old and therefore had begun to heal. One of the physicians notified the

authorities that she suspected a case of child abuse.

Gary and Mary were arrested and charged with neglect of a dependent. They were represented at their joint trial by partners in the same law firm. Both Gary and Mary were convicted by a jury and this appeal immediately followed.

## ISSUES

Appellants raise the following issues for our review:

1. Were the appellants denied their fundamental rights to effective assistance of counsel when they were represented at trial by members of the same law firm?

2. Did the trial court err in refusing Mary's tendered instruction No. 3 defining a "situation endangering the life or health" of a dependent?

3. Did the trial court erroneously instruct the jury regarding the elements of the crime?

4. Is the evidence sufficient to sustain the convictions of each defendant?

## DISCUSSION AND DECISION

*Issue One*

■ Gary and Mary first contend that their fundamental rights to effective assistance of counsel were denied when they were represented at their joint trial by members of the same law firm. The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right to effective assistance of counsel. The Supreme Court has long recognized that this right may be impaired when one attorney represents multiple co-defendants. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333; *Holloway v. Arkansas* (1978), 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426; *Glasser v. United States* (1942), 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. Multiple representation by members of the same law firm has been held analogous to multiple representation by one attorney. *Ross v. Heyne* (7th Cir. 1980), 638 F.2d 979, 982–83. *See also*

*Burger v. Kemp* (1987), —— U.S. ——, 107 S.Ct. 3114, 97 L.Ed.2d 638.

"Assuming without deciding that two law partners are considered as one attorney, it is settled that '[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel.' *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). We have never held that the possibility of prejudice that 'inheres in almost every instance of multiple representation' justifies the adoption of an inflexible rule that would presume prejudice in all such cases. See *Cuyler v. Sullivan* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Instead, we presume prejudice 'only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."' *Strickland*, 466 U.S., at 692, 104 S.Ct., at 2067 (citation omitted). See also *Cuyler*, 446 U.S., at 348, 350, 100 S.Ct., at 1719."

*Burger*, 107 S.Ct. at 3120. *See also Mullins v. State* (1988), Ind., 523 N.E.2d 419; *Carpenter v. State* (1986), Ind., 501 N.E.2d 1067.

The "actual conflict of interest" component of the *Cuyler* test concerns the competing interests of the co-defendants arising from multiple representation. *Tate v. State* (1987), Ind.App., 515 N.E.2d 1145, 1147. The focus is on the defendants' relationship to one another and whether effective advocacy of one defendant's interest impinges on the advocacy of the other co-defendant's interest. *Id.*

In contrast, the "adversely affected performance" element of the *Cuyler* test is defined by reference to the attorneys' conduct. *Tate*, 515 N.E.2d at 1147. In assessing whether performance was adversely affected we must search the record to determine (1) whether the joint attorney or affiliated attorneys, at various times, represented the different interests of the co-defendants who challenge that representation, in

which case, a reversal would be warranted for all, or (2) whether the attorney or affiliated attorneys consistently represented the interests of one co-defendant client over the interests of the other, in which case the attorneys' performance is not impaired as to the favored client, and a reversal of the client's conviction would not be warranted. *Id.* at 1148.

The relative interests of the co-defendants in this case can be defined by reference to the information. Both were charged with neglect of a dependent. Specifically, they were charged with reputedly inflicting or permitting infliction of injuries upon Mary's child, J.W. While the information, on its face, raises typical questions regarding a potential for competing interests between co-defendants charged with joint participation in criminal activity, the *Cuyler* test requires that the conflict be "actual."

Both Mary and Gary asserted at trial that the injuries suffered by the baby were merely bumps and bruises attributable to the child's normal activities and did not amount to exposure to actual and appreciable danger. They also contended that the injuries were inflicted by a third party, possibly one of J.W.'s babysitters.

The evidence indicates that both Mary and Gary spanked J.W. as a means of discipline. Gary admitted he spanked J.W. so forcefully as to leave a bruise on his buttocks. Mary admitted she was aware that Gary spanked J.W. forcefully, that she conveyed to Gary her displeasure with his disciplinary methods, that he told her he would continue to spank J.W., and that she and J.W. could move out if she disapproved of his disciplinary methods. Mary also testified that she continued to live with Gary and that she occasionally spanked J.W. as a

means of discipline. Based on the defenses raised, there is no showing that any of the evidence that helped one defendant hurt the other. *See Bean v. State* (1984), Ind., 460 N.E.2d 936, 946. We conclude that the defenses and the evidence at trial fail to indicate any actual conflict of interest between Mary and Gary.

Even if an actual conflict existed, Gary and Mary have failed to demonstrate that the conflict adversely affected the performance of their affiliated attorneys. The record indicates that the attorneys in this case were careful to inform Gary and Mary of the possible conflict of interest involved in their joint representation. Both Mary and Gary signed affidavits acknowledging their awareness of potential conflicts and waiving any objection to the attorneys' joint representation. The affidavits were filed with the trial court and the court conducted a lengthy inquiry of Mary and Gary prior to trial in order to insure that they understood fully the ramifications of the joint representation and waiver. *See* Fed. Rules of Procedure, Criminal Rule 44(c).

■ Gary asserts that his attorney's failure to pursue his "lack of legal duty" defense indicates the adverse effect of the joint representation on the attorney's performance. Indiana Code section 35–46–1–4 clearly applies, however, to a person who voluntarily assumes the care of a dependent.[1] The record reveals that Mary and her baby lived with Gary in his home and that Gary cared for the baby while Mary was working the evening shift. He picked up the child at the babysitter's home each evening as he returned from work and watched the child until late at night. He also dressed and fed the child each morning

---

1. Ind. Code § 35–46–1–4(a) provides as follows:
   "(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
   (1) places the dependent in a situation that may endanger his life or health;
   (2) abandons or cruelly confines the dependent;
   (3) deprives the dependent of necessary support; or

   (4) deprives the dependent of education as required by law;
   commits neglect of a dependent, a Class D felony. However, except for a violation of clause (4), the offense is a class B felony if it results in serious bodily injury. It is a defense that the accused person, in the legitimate practice of his religious belief, provided treatment by spiritual means through prayer, in lieu of medical care, to his dependent."

so that Mary could sleep late. Thus, Gary actively involved himself with the child's care and welfare and pursuit of a defense disclaiming any voluntary assumption of care for the child would have been fruitless.

Mary asserts that her attorney failed to develop evidence that it was Gary who inflicted the injuries on the baby. She raises as an example her attorney's objection to the introduction of a note Gary wrote on the day the baby was treated at the hospital. Gary indicated in the note that he had spanked the baby that evening because of the baby's continuous crying. What Mary overlooks, however, is that her guilt is not dependent upon proof that she rather than Gary actually inflicted the injury. The record is replete with evidence that Mary was aware that her baby was being injured, that she complained of Gary's forcefulness in spanking the baby, and that she did nothing to remove him from the situation. Thus, under the statute, Mary could be prosecuted for her failure to act. Her attorney's failure to develop fully the evidence that Gary, rather than Mary, actually administered the blows would not have excused her failure to discharge her parental responsibility.

Mary also attacks her attorney's failure to develop evidence regarding her complaints to Gary concerning his forceful disciplinary methods. It is evident from the record that she did register these complaints and that these complaints indicated her awareness of the situation and her failure to remove the baby from it. Any development of the issue of her complaints would have placed further emphasis on her knowledge and subsequent inaction and thus would have hindered rather than helped her defense.

Neither Gary nor Mary has demonstrated the existence of an actual conflict of interest in this case. Even if a conflict were found to exist, the appellants have failed to demonstrate an adverse effect on their affiliated attorneys' performance. We therefore find no violation of their sixth amendment rights to effective assistance of counsel.

*Issue Two*

Mary contends the trial court erroneously refused to read to the jury her tendered instruction No. 3. In determining whether an instruction was properly refused we must consider: (1) whether the instruction correctly states the law; (2) whether the evidence supports the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Myers v. State* (1987), Ind., 510 N.E.2d 1360, 1367. Because the decision to give jury instructions is within the trial court's discretion, we will reverse only when the trial court has abused its discretion. *Id.*

Mary's tendered instruction No. 3 states:

"If you find that the bruises or other marks found on Joshua required medical attention and without medical attention his health was endangered; in order to convict the defendant you must find, beyond a reasonable doubt, that that danger was actual and appreciable. If the State fails to prove any of these things beyond a reasonable doubt, you must find the defendant not guilty."

Record at 40. There is no doubt that Mary's proposed instruction correctly states the law. *See State v. Downey* (1985), Ind., 476 N.E.2d 121, 123. However, the trial court included as part of its charge to the jury the following:

"Instruction No. 14

"Although the statute reads 'may endanger', the law in the State of Indiana is that the statute is to be applied to situations that actually do endanger the life or health of a dependent. The placement must itself expose the dependent to a danger which is actual and appreciable."

Record at 57. We conclude that the substance of Mary's tendered instruction No. 3 was covered by the trial court's final instruction No. 14. The trial court therefore acted within its discretion in refusing Mary's tendered instruction No. 3.

*Issue Three*

Gary contends the trial court erroneously instructed the jury regarding the elements of the crime and the jury's options in determining the guilt of each or both defendants. Gary has failed to preserve this issue for review and now attempts to raise it as fundamental error. In considering a contention of fundamental error, we assess the character of the error and its effect on the trial. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 518.

In *Screws v. United States* (1945), 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, the U.S. Supreme Court held that fundamental error occurred when the trial court incorrectly instructed the jury regarding an essential element of the crime. In *United States v. Park* (1975), 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489, the Supreme Court held that no fundamental error occurred when an element of the crime was omitted from a jury instruction and the element had been an important consideration elsewhere in the jury charge or throughout the entire trial.

■ Gary asserts that the court's instructions failed to provide the jury with the proper definition of neglect of a dependent. Specifically, he claims the instructions failed to charge the jury that it must find a "continual pattern" of acts or omissions by the defendants which subjected the child to actual and appreciable danger. *See Bean v. State* (1984), Ind., 460 N.E.2d 936; *Hughes v. State* (1987), Ind. App., 508 N.E.2d 1289. The *Bean* and *Hughes* courts addressed the continual pattern aspect of neglect only as it related to the state's decision to charge the defendants with both involuntary manslaughter and neglect of a dependent. The courts focused on the continual pattern as a basis for showing that acts of neglect occurred beyond those actually causing the death of the dependent. While the statutory phrase "places the dependent in a situation" perhaps implies more than an instantaneous isolated occurrence, the statute does not require proof that the dependent was sub-

jected to the situation for a certain length of time. *Lomax v. State* (1987), Ind.App., 510 N.E.2d 215, 220. Thus, we are unpersuaded that the trial court was required to instruct the jury that it must find a "continual pattern" of behavior.

Moreover, the information in this case charged the appellants with "repeatedly" inflicting or allowing infliction of injuries upon the baby. The evidence focused on the baby's injuries occurring over a period of several months. Thus, the appellants' continual pattern of behavior was emphasized elsewhere in the prosecution of the case. Gary has failed to demonstrate that he was prejudiced by this omission from the instructions. *See Elliott v. State* (1983), Ind.App., 450 N.E.2d 1058, 1064–65. Therefore, no fundamental error occurred.

■ Gary also asserts that the trial court failed to instruct the jury of its duty to determine separately the culpability of each defendant. The trial court charged the jury in instruction No. 11 as follows:

"If you find the State proved the required elements as to one defendant, but not the other, you may return a verdict of guilty as to one and not guilty as to the other. Of course, two verdicts of not guilty or two verdicts of guilty are also possible."

Record at 54. Instruction No. 22 charged the jury as follows:

"You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.[2]

"Any evidence which was limited to [one] defendant—should not be considered by you as to any other defendant[s]."

Record at 65. Finally, instruction No. 27 charged the jury in part as follows:

"The issue of each Defendant's guilt is personal and you must make a separate determination as to whether or not each Defendant's guilt has been proven beyond a reasonable doubt."

---

**2.** We are unpersuaded by Gary's argument that the use of the masculine singular pronoun here

and elsewhere in the instructions prejudiced his case.

Record at 70. It is difficult to imagine how the trial court could have instructed the jury more thoroughly regarding its duty to determine the independent culpability of each defendant. No error occurred here.

*Issue Three*

■ Finally, Gary and Mary each contend the evidence is insufficient to sustain their convictions. When reviewing a challenge of insufficient evidence we neither reweigh evidence nor judge witness credibility. Rather, we examine the evidence most favorable to the judgment together with all reasonable inferences to be drawn from it. If substantial evidence of probative value exists to support the jury's conclusion, we must affirm. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672.

Gary and Mary were charged under I.C. § 35–46–1–4(a)(1) with knowingly or intentionally placing J.W., a dependent under their care, in a situation which may have endangered his life or health. Gary claims the evidence is insufficient to establish that he was responsible for J.W.'s welfare. The statute clearly states, however, that the caregiver need not be under any legal obligation. Instead, he may assume voluntarily the care of the child. As previously discussed, Gary watched the child every morning, retrieved the child from the babysitter's home every afternoon, and watched the child every evening while Mary worked. This evidence is sufficient to sustain a finding that Gary assumed voluntarily the care of the child.

Mary claims the evidence is insufficient to show that she knowingly placed J.W. in a dangerous situation. The record reveals, however, that during the summer of 1986, J.W.'s doctor had asked Mary about the origin of bruises he noticed on the baby. On another occasion, Mary spoke to the babysitter's sister regarding J.W.'s bruises. Mary knew that Gary used forceful spankings as a method of disciplining the baby. She also knew that Gary intended to continue spanking the baby and refused his invitation to move out if she disapproved of his forceful disciplinary methods. The jury reasonably could have inferred that Mary knowingly placed J.W. in a dangerous situation.

Gary and Mary claim that the child's injuries were insufficiently severe to indicate that they placed him in a dangerous situation. As previously discussed, in order to convict a person under I.C. 35–46–1–4, the state must prove that he subjected the dependent to danger which is actual and appreciable. *State v. Downey* (1985), Ind., 476 N.E.2d 121, 123. Gary and Mary rely on *Dayton v. State* (1986), Ind.App., 501 N.E.2d 482 in which the Second District reversed a neglect conviction based on insufficiently severe injuries. In *Dayton,* the defendant was charged based on his failure to seek timely medical attention for the child "after having beaten [her] ..." *Id.* at 484. The court, in reversing, reasoned that he could not be convicted for failing to seek medical attention when the injuries, numerous external bruises, did not require any medical attention.

The present charges, however, are not based on the appellants' failure to seek medical attention for the baby. Rather, they are based on Gary's repeated and forceful disciplinary methods which, admittedly, have caused the baby's buttocks to be bruised, and on Mary's knowledge and failure to remove the baby from the situation.

According to the physicians who treated the baby on October 1, 1986, the baby not only had numerous external bruises, but also suffered a second degree burn on his buttocks and abrasions on his fingers and toes. Although the doctors indicated that the baby's condition was not life-threatening, it was sufficiently severe to cause one of the physicians to notify the authorities. Thus, based on the evidence regarding the baby's burns, abrasions, and bruises the jury reasonably could have concluded that Gary and Mary exposed the baby to danger which was actual and appreciable. The evidence therefore is sufficient to support the appellants' convictions for neglect of a dependent. Accordingly, we affirm.

Affirmed.

ROBERTSON, J., concurs.

MILLER, P.J., dissents with separate opinion.

MILLER, Presiding Judge, dissenting.

I dissent. The majority concludes the defendants were not denied their fundamental right to effective assistance of counsel under the test enunciated in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333. In order to determine whether the defendants have been denied effective assistance of counsel this court must search the record to determine (1) whether there was an actual conflict of interest between the defendants, and (2) whether the conflict adversely affected counsel's performance. *Cuyler, supra; Tate v. State* (1987), Ind.App., 515 N.E.2d 1145.

As Judge Shields explained in *Tate,*

"Where an actual conflict of litigation interest exists between the defendants, the attorney's active representation necessarily will result in impairing his performance as to at least one defendant. Given his clients' conflicting interests, counsel is necessarily and inevitably placed in the position where he cannot represent the interest of one defendant without impairing the representation of his other client's interest. Thus, as to the adversely affected performance component of the *Cuyler* test, the record must be searched or evidence must be submitted at a hearing, not to assess the quality of the attorney's tactics, but to determine (1) whether the joint attorney, at various times, represented the different interests of his clients who are challenging that representation, in which case, a reversal would be warranted for all, or (2) whether the attorney consistently represented the interests of one client over the interests of his other client, in which case the attorney's performance is not impaired as to the fa-

vored client, and a reversal would not be warranted for that client."

*Tate, supra* at 1148.

The majority notes Mary and Gary asserted at trial the baby's injuries were nothing more than the ordinary injuries sustained by a child learning to crawl or walk, or, alternatively, the injuries were inflicted while the child was at the babysitter's home. However, Mary also tried to assert she believed the earlier injuries were adequately explained in this way, but when she discovered the more extensive injuries on October 1, she suspected Gary of inflicting them, and took the baby to the hospital.

This defense was not fully pursued. To have done so would have harmed Gary's defense. At one point, the State attempted to question Mary about a note Gary had written to her on the day she took the baby to the hospital. The note contained an admission Gary had spanked the baby the night before. Mary's counsel objected to the testimony concerning the note. Clearly the note would hurt Gary's defense and may have helped Mary. The objection was overruled and Mary was questioned briefly by the State about its contents. Her counsel did not pursue the matter further. This incident shows an actual conflict of interest existed between Mary and Gary which adversely affected the performance of her counsel.[1]

Gary asserts his attorney's failure to pursue his "lack of legal duty" defense shows the adverse effect of the joint representation. As the majority notes, such defense, under the facts of this case, would have been unavailing. In addition, this defense could not have been harmful to Mary's defense. Gary did not claim Mary injured the baby. Therefore, reversal is not warranted as to Gary.

However, Gary's defense did impair Mary's attorney's representation. I would reverse Mary's conviction.

---

**1.** Mary does not need to show the objection to the testimony resulted in actual prejudice. "[P]rejudice is presumed when counsel is bur-

dened by an actual conflict of interest." *Strickland v. Washington* (1984), 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674.