Gina HILL, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee.

No. 49A02–8803–CR–93.

Court of Appeals of Indiana,
Second District.

March 13, 1989.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and John D. Shuman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Gina Hill (Hill) appeals her jury conviction of neglect of a dependent, a class B felony.

We affirm.

First, Hill challenges the sufficiency of the evidence, contending that she was not proven beyond a reasonable doubt to have knowingly committed the offense charged: knowingly and intentionally placing Barry Janczewski, a dependent in her care, in a situation which may have endangered his life or health, to-wit: failing to obtain medical treatment for him which resulted in serious bodily injury, to-wit: death.

When reviewing the sufficiency of the evidence, we refuse to reweigh the evidence or determine the credibility of the witnesses. Rather, we will consider only that evidence which is favorable to the State together with all logical and reasonable inferences to be drawn therefrom. If there is sufficient evidence of probative value from which the jury could find Hill guilty beyond a reasonable doubt, we will uphold the verdict. *Wilson v. State* (1988) 1st Dist. Ind.App., 525 N.E.2d 619.

The evidence favorable to the verdict is that on February 11, 1986, Kelly Janczewski left her son Barry, age three, in Hill's care until she recovered from strep throat. On February 13, friends of Hill and her husband visited them and observed Barry standing on his tiptoes with his nose in a circle drawn on the wall. Hill's husband told them that this was punishment for Barry's wetting his pants and that he had also "blister[ed] Barry's ass" for wetting his pants. Record at 272. Hill testified that both she and her husband had spanked Barry. She also testified that she gave Barry a bath on February 14 and noticed bruises on his chest, buttocks, and arms. Hill's husband admitted that on the same day he hit Barry in the stomach hard enough to make him cry. That evening, Barry fell from the front porch and later complained of a stomach ache. Hill unsuccessfully attempted to call Barry's mother but then dismissed his complaints, thinking he had an upset stomach. At about 8:15 A.M. the next morning, she saw Barry run into a wall and then realized that he had lost physical control. Hill called Barry's mother, requesting that she come over. While waiting for Kelly, Barry became le-thargic. Upon her arrival, Kelly called an ambulance. Barry was pronounced dead at the hospital emergency room.

Dr. Stephen Allen Clark testified that Barry died from peritonitis resulting from a torn bowel, which injury occurred 24 to 72 hours prior to death. Dr. Clark observed bruises on Barry's stomach in a pattern associated with the knuckles of a fist and other bruises on the buttocks in a pattern indicating a hand. He believed that these bruises were highly unlikely to be the result of a fall. Neither did he believe that Barry could have been walking around the morning prior to his death. Dr. Clark further testified that the average layperson would recognize that a child with peritonitis needs medical attention. Symptoms which Barry should have exhibited include severe abdominal pain, dehydration, sunken eyes, and a lethargic, comatose, unresponsive state of being. If treated early, peritonitis is not usually fatal.

These facts led the jury to conclude that Hill, while caring for Barry, placed him in a situation which endangered his life. Irrespective of this evidence, Hill contends that the jury could not reasonably find that she acted knowingly and intentionally. We hold that the evidence and reasonable inferences therefrom support the jury's conclusion.

A person knowingly commits neglect of a child when he is "subjectively aware of a high probability that he placed the dependent in a dangerous situation." *Ware v. State* (1982) 2d Dist. Ind.App., 441 N.E.2d 20, 23, *trans. denied.* Such determination requires resort to inferential reasoning to ascertain mental state. We must look to all the surrounding circumstances of the case to determine if a guilty verdict is proper. *McMichael v. State* (1984) 4th Dist. Ind.App., 471 N.E.2d 726, *trans. denied.*

Knowing neglect of a child has been inferred in similar fact situations. In *McMichael, supra,* there was sufficient evidence of knowing neglect of a dependent where the dependent became ill at least thirty hours prior to his death and that several symptoms of the peritonitis then existent

would have been apparent. The defendant also admitted that he had considered taking the dependent to a doctor 24 hours prior to his death. In *Perkins v. State* (1979) 3d Dist., 181 Ind.App. 461, 392 N.E.2d 490, the jury inferred knowledge where the dependent was beaten while the defendant was in the next room. As a result of the beating, the child vomited, looked pale and sick, and had multiple bruises. An expert testified that the child should have been listless with labored breathing and clammy skin. Because defendant did not seek medical attention, she was properly convicted of knowingly committing neglect. Finally, in *Wilson, supra,* 525 N.E.2d 619, knowledge sufficient for a conviction of neglect was properly inferred where a doctor asked defendant about bruises on the child, defendant had conversed with the babysitter about the bruises, and defendant was aware that her baby was being spanked.

■ The totality of the circumstances in the present case also indicates that Hill had knowledge that she was placing Barry in a dangerous situation by failing to obtain medical care. As in the above cases, symptoms of the dependent's condition were present, from which the average layperson would have detected a serious problem necessitating medical attention. Hill evidently did detect some of these symptoms on the evening prior to Barry's death because she attempted to call his mother then. When Barry exhibited more signs of illness the next morning, she again called Kelly but waited for her arrival rather than seeking immediate medical attention. Kelly detected a serious problem and called an ambulance immediately upon her arrival. It was reasonable for the jury to infer from these facts that Hill knowingly committed child neglect.

■ Hill's second contention is that the trial court erroneously refused one of her tendered instructions. We must consider:

(1) Whether the tendered instruction correctly states the law;

(2) Whether there is evidence in the record which supports the tendered instruction; and

(3) Whether another instruction covered the substance of the tendered instruction.

*Wilson, supra,* 525 N.E.2d 619; *Armour v. State* (1985) Ind., 479 N.E.2d 1294. Because Hill's tendered instruction incorrectly states the law, there was no error in refusing it.

Hill was found guilty of a class B felony rather than a class D felony because the jury determined that her failure to seek treatment for Barry resulted in serious bodily injury. The court defined serious bodily injury in an instruction as:

"bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Record at 77.

This instruction is an exact statement of the definition of serious bodily injury in I.C. 35–41–1–25 (Burns Code Ed.Repl.1985). The instruction which Hill contends should have been given read:

"The term serious bodily injury does not include injury which results in death." Record at 50.

Hill bases her argument for this instruction upon *Hall v. State* (1986) Ind., 493 N.E.2d 433, 435:

"The legislature has distinguished between child neglect which results in serious bodily injury [3] and neglect which results in the child's death."

"3. The legislature may not have intended the child neglect statute to encompass neglect which results in the death of the dependent child, expecting such cases to be charged under one of the homicide provisions. The neglect statute specifically provides that '... the offense is a class B felony if it results in serious bodily injury.' Ind. Code § 35–46–1–4(a)(4) (Burns 1985 Repl.). The present definition of serious bodily injury is specific. Ind. Code § 35–41–1–25 (Burns 1985 Repl.). This statutory definition includes bodily injury which creates a substantial risk of death but omits injury which results in death, the latter being expressly in-

cluded in the former definitional section. Ind. Code § 35–41–1–2 (Burns 1979 Repl.)."

Our Supreme Court and the legislature recognize the obvious—that when an act of child neglect causes death, there has been a homicide which may always permissibly be charged. We agree that the legislature apparently omitted injury resulting in death from the statutory definition of serious bodily injury in order to invite such cases to be charged under the homicide provisions. However, it does not follow from *Hall, supra,* and the change in the pertinent statute, that neglect of a dependent resulting in serious bodily injury, a class B felony, cannot be charged when the injury results in death. *See Lamphier v. State,* (1989) Ind., 534 N.E.2d 699.

Serious bodily injuries which result in death are not excluded from the definition of serious bodily injury. In *Smith v. State* (1980) 1st Dist.Ind.App., 408 N.E.2d 614, 622, *overruled on other grounds,* 479 N.E. 2d 1294 (1985), the first district stated that neglect which results in death "inherently pose[s] a risk of serious bodily injury." In the present case prior to the death, the neglect which resulted in death caused, not merely risked, serious bodily injury. Because serious bodily injury due to neglect may precede death and because the legislature did not prohibit the charging of neglect when a death occurs, Hill's instruction is an incorrect statement of the law. The trial court did not err in denying this instruction.

THE JUDGMENT IS AFFIRMED.

BUCHANAN and NEAL, JJ., concur.