Michael G. MALONE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 82A01–8906–CR–199.

Court of Appeals of Indiana,
First District.

Dec. 18, 1989.

Transfer Denied March 23, 1990.

John D. Clouse, John P. Brinson, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Michael G. Malone appeals his conviction of three counts of theft. The State alleged that Malone, as executive director of the Evansville Community Action Program (CAPE), exerted unauthorized control over labor and services belonging to CAPE, on three separate occasions, with the intent to deprive CAPE of the value or use of the labor and services.

We affirm.

Malone challenges the adequacy and specificity of the indictments and the sufficiency of the evidence to sustain the jury's verdicts.

### I.

Malone contends the trial court erred in denying his motion to dismiss the indictments because the facts alleged do not constitute a crime and the indictments, which do not specify in what way Malone's conduct was unauthorized, do not state the offense with sufficient clarity.

 We will not speculate as to the basis of Malone's first allegation of error. Malone simply has not given us enough either by way of argument or authority to discern his contentions. Accordingly, to the extent Malone is making two distinct arguments concerning the adequacy of the indictments, we deem his first contention, that the facts alleged do not constitute a crime, waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Goad v. State* (1987), Ind., 516 N.E.2d 26, 28.

 Malone's second contention, that the indictments are fatally defective because they do not specify the definition of "unauthorized" relied upon by the State, is also

without merit. The notice requirement of Art. 1, § 13 of the Indiana Constitution provides a defendant with the opportunity to know the accusations against him so that he may anticipate the proof and prepare a defense in advance of trial. *Head v. State* (1982), Ind., 443 N.E.2d 44, 51. However, the formal and substantive requirements of a valid indictment are defined in IND. CODE 35–34–1–2 which was enacted to effectuate the constitutional guarantee. *Id.* An indictment must contain all of the essential elements of the crime charged, *see, id; Brown v. State* (1980), Ind.App., 403 N.E.2d 901, 906, *trans. denied,* but other details may be omitted and a motion to quash properly denied unless the indictment is so uncertain and indefinite that the nature of the charge cannot be ascertained. *Blackburn v. State* (1973), 260 Ind. 5, 291 N.E.2d 686, 690. *Accord, Head, supra* (reversal not warranted unless defendant otherwise misled as to nature of charge against him) and *Simmons v. State* (1987), Ind., 504 N.E.2d 575, 580.

 The indictments at issue here did not omit an essential element; they alleged in the language of the statute that Malone's control over particular labor and services was unauthorized. Generally, an indictment in language paralleling the words of the statute is sufficient. *See, Davis v. State* (1985), Ind.App., 476 N.E.2d 127, *trans. denied; Ralston v. State* (1980), Ind.App., 412 N.E.2d 239, *trans. denied.* There is no need for further description of methods employed in committing the crime, *Davis, supra; Moody v. State* (1983), Ind., 448 N.E.2d 660, and the fact that the indictments also recited the alleged means by which Malone came to exert unauthorized control over labor and services belonging to CAPE is mere surplusage. *See, Jones v. State* (1984), Ind.App., 467 N.E.2d 1236, 1242.

The indictments involved here contained enough to apprise Malone of the allegations he must be prepared to meet and put him in a position to plead double jeopardy to any subsequent charge of the same offense. Nothing more is required. *Cf., Simmons,* 504 N.E.2d at 580.

## II.

Malone also argues that the evidence is insufficient to establish that CAPE is a person within the meaning of the statute and that his use of labor and services belonging to CAPE was unauthorized.

Malone's contention with respect to CAPE's status is simply that the State failed to demonstrate that CAPE was a corporation, as the State alleged. The appellant in *Liford v. State* (1975), 164 Ind. App. 349, 328 N.E.2d 443, *trans. denied* raised a similar contention. In that case, this court, citing *Smith v. State* (1867), 28 Ind. 321 in which the existence of the company as a corporation was proved orally as a fact solely by its given name, reiterated that the State need not prove the existence of the victim as a *de jure* corporation; it need only show a *de facto* corporation.

 The record in the present case establishes, in addition to the witness's perception that the program may be incorporated, that CAPE is run by a board of directors with officers. The program receives local, state, and federal funding and operates programs for the poor and various minorities including Job Fill, Head Start, Senior Aids, Foster Grandparents, Project Safe, weatherization and bus programs. This evidence supports the reasonable inference that CAPE was in fact functioning as a corporation, regardless of the corporation's legitimacy. As in *Liford, supra,* it is sufficient to establish that CAPE was a person within the meaning of the theft statute, I.C. 35–43–4–2.

Malone's second sufficiency claim concerns the proof offered on the element of authorization. The State alleged by count I that on or about June 6 and 7, 1985, Malone knowingly exerted unauthorized control over property of CAPE, to-wit: labor and services involved in the installation of a roof vent and attic fan at his personal residence, with intent to deprive CAPE of the use and benefit of the employees' labor. The State's evidence showed that Malone, as executive director of CAPE, directed a work crew assigned to a project at 716 Sweetser to his home to install a roof vent

and attic fan. CAPE paid the employees for eight hours of work on those two days. Malone directed the general foreman of the crew to bill the labor to whatever project they were working on at the time.

In count II, the State alleged that Malone, on or about August 16, 1985, knowingly exerted unauthorized control over CAPE's labor and services involved in moving washing machines to Malone's personal residence, again with the statutory intent to deprive. The evidence offered by the State showed that Malone directed a maintenance employee assigned to the garage and another individual who was not an employee of CAPE to remove unwanted washing machines from his home and move in another unit. Both individuals were issued checks from CAPE, contract forms showing the hourly rate to be paid were completed by Malone, and the employee showed on his timecard that he had worked eight hours that Friday. Later, the timecard was altered to show those hours were worked on a Saturday. The employee did not make the alteration. In addition, the evidence demonstrated that the checks came directly from Malone rather than through customary channels within the office.

Finally, with respect to the third count, the State alleged Malone employed the labor and services of CAPE employees to set up a computer table. Again, the evidence showed that Malone dispatched an employee to pick up the table and two employees to set it up at Malone's home. The general foreman involved in this instance reported that he was told by Malone to charge the time to wherever he was working, which was at 769 Cross Street.

In cases involving a theft of labor and services in an employment setting, the alleged perpetrator is always in a lawful as well as unlawful relationship with the victim and its property. Hence, there is really no question the alleged perpetrator exerted control over property of another. Rather, the critical question becomes, in the language of the statute, whether that control was unauthorized. IND.CODE 35–43–4–1(b) indicates that a person's control over property of another is "unauthorized" if it is exerted:

> (1) without the other person's consent;
> (2) in a manner or to an extent other than that to which the other person has consented; ...

The direct evidence in this case concerning Malone's authority, and the consent of his employer to use CAPE employees for certain personal projects is admittedly sparse. Allen Hurt, a member of CAPE's Board of Directors at the time the alleged acts of theft occurred, testified that CAPE's Board of Directors set policy while the executive director runs CAPE's day-to-day activities and is answerable to the Board. Hurt also testified that major expenditures and policy had to be approved by the Board. The record contains no direct evidence in the form of testimony or exhibit showing the Board's policy with respect to the use of CAPE employee labor and services generally or with regard to the uses alleged as thefts.

 Nonetheless, a conviction may be sustained in whole or part upon circumstantial evidence so long as the evidence is of such probative value that a reasonable inference of guilt beyond a reasonable doubt may be drawn therefrom. *Lovell v. State* (1985), Ind., 474 N.E.2d 505, 507. We will not weigh evidence on appeal, but we will review the evidence most favorable to the State and any reasonable inferences which may be drawn therefrom for the purpose of deciding whether, as a question of law, an inference may reasonably be drawn from the evidence to establish each essential element of the offense beyond a reasonable doubt. *Id.*

 On the question of authorization, the State offered evidence showing (1) that persons working under Malone thought the uses of labor were improper because they did not involve what the employees believed to be CAPE business; (2) that in late 1985, when Hurt confronted Malone in the presence of several board members about allegations Malone had his employees doing personal work for him and charging it to CAPE time, Malone denied the allegations, admitting that he had used CAPE employ-

ees but the work was done on their own time; (3) that Malone directed the employees to report the hours as if the hours had been incurred on the job site where the employees had been working; and (4) that with respect to the incident involving movement of the washing machines, ordinary procedures for securing payment for the individuals involved were not followed and an employee's timecard was altered to preclude double payment by CAPE for the same period of time.

Initially, we observe that the fact Malone's employees thought the use improper does not establish that the work was in fact accomplished without CAPE's consent. This evidence demonstrates simply, that if there was an authorization, or Malone was acting within the scope of his authority, Malone's employees were unaware of it. *Cf., Bruck v. State* (1963), 244 Ind. 466, 193 N.E.2d 491, 496. However, we cannot apply the same reasoning to Hurt's apparent lack of knowledge. Although authorization might have been accomplished in his absence, Hurt stated that he confronted Malone at a meeting involving several board members. Presumably, if a valid policy existed permitting Malone to utilize CAPE employees for certain projects at his personal residence that fact would have been brought to light at that time. Instead, Malone attempted to suppress the facts surrounding his receipt of labor and services by denying that the work to his residence was done on CAPE time. This evidence coupled with the testimony that Malone directed the employees to falsely bill the hours to projects upon which they were working at the time permits one logically to infer that Malone knew the use of labor and services was unauthorized and attempted to conceal the theft by reporting the labor as if it had been expended on legitimate projects. *Cf., Snyder v. State* (1979), 182 Ind.App. 24, 393 N.E.2d 802, *trans. denied* and *Berridge v. State* (1976), 168 Ind.App. 22, 340 N.E.2d 816, *trans. denied.*

The transcript contains other evidence of concealment and evasion. With respect to the charge alleging movement of washing machines, the record shows Malone created contracts of employment for janitorial services after the work had been accomplished and the individuals were looking for payment, forms procedurally necessary to obtain issuance of the checks. The testimony indicates that janitorial services were never rendered. The record also indicates that Malone personally obtained possession of the paychecks once they were issued by CAPE's fiscal officer and personally released them to the employees. Under ordinary circumstances, CAPE employees obtain payment for their services from the fiscal officer rather than the executive director. Lastly, the record shows the CAPE employee involved in moving the machines at Malone's residence reported that he had worked eight hours that particular Friday. Someone other than the employee inartfully altered the employee's timecard to show the eight hours worked on Saturday. Although there is no direct evidence that Malone made the changes to the timecard, a reflection on the timecard that the employee was not working for CAPE on the day in question would tend to substantiate his assertion that the employee was working for him on his own time.

The evidence offered by the State to prove lack of authorization shows reception of labor and services for what appears to be personal purposes, Malone's admission that he used CAPE employees for personal business, and furtive efforts by Malone to prevent recognition of the thefts. These circumstances, when considered together, are an adequate basis for inferring that Malone's exertion of control over labor and services belonging to CAPE was without CAPE's consent and therefore unauthorized.

Judgment affirmed.

BAKER and BUCHANAN, JJ., concur.