Chavez E. **FISHER,**
Defendant–Appellant,

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 82A01–8905–CR–154.

Court of Appeals of Indiana,
First District.

Jan. 16, 1990.

John P. Brinson, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Chavez E. Fisher (Fisher), appeals his convictions for failure to report child abuse, a Class B misdemeanor,[1] and neglect of a dependent, a Class B felony.[2] We affirm in part and reverse in part.

### STATEMENT OF THE FACTS

The facts most favorable to the verdict reveal that in March, 1987, Fisher first met Kathy Gasaway (Kathy) in a local laundromat. Kathy was married to Danny Gasaway (Danny) and had a one-year-old son, Christopher. Over the next few months,

---

1. IND.CODE 31–6–11–3(a); IND.CODE 31–6–11–20(a).

2. IND.CODE 35–46–1–4.

Kathy visited Fisher several times at Fisher's apartment. In June, 1987, Kathy left Danny, took Christopher, and moved in with Fisher and his two-year-old son. According to Kathy, she left Danny because he was abusing her and Christopher.

During the last weekend of June, 1987, Kathy took Christopher, left Fisher's apartment, and returned to Danny. Both Danny and his family noticed that Christopher had an injured lip and had bruises on his legs and stomach. Kathy claimed the injured lip was caused by fever blisters and the bruises were sustained when Christopher fell down while playing with other children.

On June 29, 1987, Kathy again left Danny, took Christopher and returned to Fisher's apartment. Fisher told Kathy that she and Christopher could only stay with him for two weeks and began investigating other living arrangements for Kathy and Christopher. On July 4, 1987, Danny went to Fisher's apartment in an unsuccessful search for Kathy and Christopher because he was suspicious of Christopher's injuries and believed he was not receiving proper care.

On July 6, 1987, Kathy left Christopher with Fisher while she went to a local health clinic. While there, she requested some burn ointment for what she told the staff was a hot water burn suffered by her husband. Danny testified at trial, however, that he never received such a burn.

On July 9, 1987, Fisher informed Kathy that he had made arrangements for her and Christopher to stay at the YWCA. They never moved to the YWCA, however, because Christopher died in the early morning hours of July 10, 1987.

Kathy and Fisher brought Christopher to the hospital because he had stopped breathing. Efforts to revive him were futile. The results of an autopsy revealed multiple bruises of various ages covering Christopher's body. There was extensive injury to Christopher's back including a burn whose

shape resembled a steam iron. The roof of Christopher's mouth was torn and his lower lip had been cut by his teeth. Christopher suffered extensive injury to his internal organs caused in part by his nine broken ribs. There was hemorrhaging inside Christopher's skull and his brain was swollen. The cumulative effect of these injuries caused Christopher's death.

As a result of Christopher's death, Fisher was charged by indictment with the following: Count I, neglect of a dependent, Count II, accessory to involuntary manslaughter, and Count III, failure to report child abuse. The trial court dismissed Count II and a jury convicted Fisher as charged on the remaining two counts. Fisher appeals.

## ISSUES

The following issues are presented for our review: [3]

I. Whether the indictment and the evidence were sufficient to support a charge and conviction for neglect of a dependent.

II. Whether the trial court erred in refusing to grant Fisher's motion for a mistrial.

## DISCUSSION AND DECISION

### ISSUE I

 It is well settled that when reviewing a claim of insufficient evidence, this court will neither reweigh the evidence nor judge the credibility of the witnesses. We will consider the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. We will affirm a conviction if it is supported by substantial evidence of probative value. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670; *Wilson v. State* (1988), Ind. App., 525 N.E.2d 619.

 Fisher was charged by indictment as follows:

3. In his brief, Fisher raises seven issues. Six of the stated issues attack his conviction for neglect of a dependent. Our disposition of this case, however, allows us to restate these six issues as one. Fisher's claimed error regarding

his exposure to a juror while he was handcuffed and in custody concerns both his convictions. Fisher does not raise any additional errors with respect to his conviction for failure to report child abuse.

The Grand Jurors for the County of Vanderburgh and State of Indiana, upon their Oaths, present and charge that CHAVEZ E. FISHER from on or about the 26th day of June through the 10th day of July, 1987 at said County: did knowingly place a dependent child, to-wit: Christopher L. Gasaway, age one (1) year, in a situation that endangered his life and health, the said Chavez E. Fisher having voluntarily assumed the care of said Christopher L. Gasaway by taking said child and his natural mother, Kathy J. Gasaway, into his home and allowing said child to remain there in spite of the repeated and systematic physical abuse inflicted upon him by the said Kathy J. Gasaway which resulted in serious bodily injury to and the eventual death of said Christopher L. Gasaway even after said physical abuse became known to the said Chavez E. Fisher, all in violation of I.C. 35–46–1–4.

*Record* at 12. The statute underlying the charged offense provides:

(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that may endanger his life or health;

\* \* \* \* \* \*

commits neglect of a dependent, a Class D felony. However, except for a violation of clause (4), the offense is a Class B felony if it results in serious bodily injury. It is a defense that the accused person, in the legitimate practice of his religious belief, provided treatment by spiritual means through prayer, in lieu of medical care, to his dependent.

IND.CODE 35–46–1–4. To establish neglect of a dependent, the State must prove that Fisher had care of Christopher, whether assumed voluntarily or because of legal obligation, and knowingly or intentionally placed him in a situation which endangered his life or health, and that serious bodily injury resulted. *Id.; Armour v. State* (1985), Ind., 479 N.E.2d 1294. According to the indictment, the specific conduct which constituted neglect was Fisher allowing

Christopher to remain in his home despite "the repeated and systematic physical abuse inflicted upon him by [his mother] ... even after said physical abuse became known to [Fisher]." *Record* at 12. Because we do not believe this conduct amounts to neglect of a dependent, we reverse Fisher's conviction on that charge.

Fisher first contends that he did not voluntarily assume care of Christopher. He argues that Christopher and Kathy were temporary guests in his home and that the only time he voluntarily assumed care of Christopher was when he babysat the child while Kathy went to the local health clinic. His responsibility terminated, he argues, when Kathy returned to his home. There is evidence in the record, however, that Fisher paid for Christopher's food and diapers and performed household duties such as cooking and cleaning. Occasionally, Fisher bathed the child and was seen holding him. We believe it is reasonable to infer from the evidence in the record that Fisher voluntarily assumed the care of Christopher.

Fisher next contends that even though Kathy Gasaway was a "dangerous situation", he did not "place" Christopher in that situation. The State responds that Fisher knew Kathy was beating Christopher due to the obvious nature of the numerous injuries he suffered. Accordingly, the State argues, Fisher neglected Christopher because he knew of the abuse yet "left the defenseless child to be beaten to death by its mother." *Appellee's Brief* at 10.

In order to constitute knowing behavior, Fisher's culpability must have been at a level where he was subjectively aware of a high probability that he placed Christopher in a dangerous situation. *Armour, supra.* While Fisher may have been aware of Kathy's abuse of Christopher, he did not place him in that situation. Kathy and Christopher had a legal relationship of mother and child which, unless otherwise terminated or modified, gave her the legal right to custody of her child. The relationship arose when Christopher was born to Kathy and not when Fisher opened his home to them.

Fisher did not have the authority to separate Christopher and Kathy. The only alternative available to him was to notify the authorities that Kathy was abusing Christopher so that they could take action to protect the child. Fisher's failure to do so constituted the separate offense of failing to report child abuse for which he was rightly convicted and punished. His failure to report was insufficient, however, to establish that he knowingly placed Christopher in a dangerous situation. Accordingly, Fisher's conduct as described in the indictment did not constitute neglect of a dependent and, therefore, the jury's verdict cannot stand.

Our conclusion is supported by this court's recent decision in *Wilson v. State* (1988), Ind.App., 525 N.E.2d 619. In *Wilson,* the abused child's mother attacked her conviction for neglect of a dependent claiming she did not knowingly place her baby in a dangerous situation. This court upheld the conviction because the mother knew her live-in boyfriend was using forceful spanking to discipline the less-than-eight-month-old baby. The mother also knew her boyfriend intended to continue using such disciplinary methods yet declined his invitation to move out if she disapproved of his actions. The mother was the custodial parent and could legally remove the baby from the known dangerous situation created by the boyfriend, but she refused to do so.

Unlike the mother in *Wilson,* Fisher did not have the option of removing Christopher from the dangerous situation created by Kathy. Because the abusing party in the case before us was the custodial parent, Fisher's only course of action was to report the abuse. Accordingly, Fisher's conviction for neglect of a dependent is reversed.

ISSUE II

■ Fisher also asserts that the trial court erred in refusing to grant his request for a mistrial. Fisher claims he was prejudiced when a juror rode on the same elevator with him while he was being transported to the courthouse in handcuffs and in custody.

■ When ruling on a motion for a mistrial, the trial court acts within its discretion. *Jenkins v. State* (1986), Ind., 492 N.E.2d 666. If a defendant is seen by a juror while being transported in handcuffs, the defendant must show actual harm to warrant a reversal. *Id.* Fisher has failed to so demonstrate.

Generally, a defendant may not be presented to the jury in bonds or shackles unless, in the discretion of the trial court, it is necessary to prevent escape, provide protection to others or maintain order. *Smith v. State* (1985), Ind., 475 N.E.2d 1139. In the present case, the juror saw Fisher in a chance meeting on the elevator. Nothing was said by the juror, Fisher or the deputy transporting him. We see nothing in the record to indicate Fisher was prejudiced by such a chance encounter as it is reasonable for a juror to expect a defendant to be in police custody while being transported to the courtroom. *Jenkins, supra* (trial court properly denied motion for mistrial when juror saw defendant handcuffed in hallway of courthouse). The trial court properly refused Fisher's motion for a mistrial.

Fisher's conviction for failure to report child abuse is affirmed. His conviction for neglect of a dependent is reversed.

ROBERTSON and SULLIVAN, JJ., concur.