**Joseph KERLIN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 32A01–9009–CR–370.**

Court of Appeals of Indiana,
First District.

June 12, 1991.

Rehearing Denied July 23, 1991.

J.J. Paul, III, James H. Voyles, Jr., Dennis E. Zahn, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Joseph Kerlin brings this interlocutory appeal from the denial of his motion to dismiss two indictments for Neglect of a Dependent [1], Class D felonies. We affirm.

## ISSUES

We restate the issues on appeal as:

1. Whether the neglect of a dependent statute is unconstitutionally vague and overbroad as applied to Kerlin.

2. Whether the indictments are sufficient.

## FACTS

Kerlin is a physician engaged in family practice. Kerlin also serves as the medical director for Cardinal Health Care ("Cardinal") in Danville. He serves as a medical consultant to Cardinal and provides medical care to each of the patients at least once a month.

Virginia Meredith, the victim named in one of the indictments, was admitted to Cardinal in July 1988 after a hip operation. She was 86 years old and suffered from Alzheimer's Disease. Kerlin was consulted by the staff who were concerned that discoloration of Meredith's foot indicated the possibility of gangrene. Kerlin saw Meredith on several occasions. Meredith was transferred to the hospital due to the gangrene in August 1988, and her family chose not to amputate the leg. Meredith died a month later.

Willard Flory, the victim named in the other indictment, was also a patient at Car-

---

1. IND.CODE § 35–46–1–4.

dinal. Flory was incontinent and used a wheel chair. Two weeks before Flory was transferred to the hospital, Kerlin visited Flory and cut his toenails which were infected. Flory also was afflicted with a chronic eye infection. Kerlin treated Flory's eye infection with antibiotics and ordered occasional cultures to monitor it. At the hospital, a maggot was discovered under one of Flory's toenails, and his eyes were matted shut.

On March 14, 1990, a grand jury indicted Kerlin, separately charging neglect of a dependent regarding Flory and Meredith. Kerlin filed a motion to dismiss the indictments and a notice of attack of the constitutionality of the statute. After a hearing, the court denied the motion to dismiss on August 24, 1990. Kerlin petitioned for interlocutory appeal, which this court accepted on January 4, 1991. Meanwhile, the State filed a motion to dismiss the indictment involving Meredith on December 21, 1990. On January 14, 1991, the trial court granted the State's motion to dismiss the Meredith indictment. In his appellate brief, Kerlin questions the jurisdiction of the trial court to dismiss the Meredith indictment. However, this question is not properly before us in this interlocutory appeal, and we do not address it. We consider the issues certified for interlocutory appeal regarding both indictments.

## DISCUSSION AND DECISION

*Issue One*

■ Kerlin alleges the neglect of a dependent statute is unconstitutionally vague and overbroad as applied to him. Kerlin contends the statute is vague because it may be applied to proscribe alleged negligent medical care.[2] I.C. § 35–46–1–4 reads:

"A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that may endanger his life or health; ...

commits neglect of a dependent, a class D felony."

A statute is not unconstitutionally vague if persons of ordinary intelligence would comprehend it to adequately inform them of the proscribed conduct. *Mallory v. State* (1990), Ind.App., 563 N.E.2d 640, 644, *trans. denied.* An itemized list presenting each item of prohibited conduct in the statute is unnecessary. *Id.*

■ Kerlin acknowledges that the statute was narrowed by judicial interpretation, construing that the statute only applied to situations that actually endanger the life or health of a dependent. *See State v. Downey* (1985), Ind., 476 N.E.2d 121, 123. In *Downey,* our supreme court held the statute met minimal due process notice requirements and was constitutional. *Id.* The pertinent proscribed conduct in I.C. § 35–46–1–4 is the knowing or intentional placing of a dependent in a situation that subjects the dependent to danger which is actual and appreciable. *Wilson v. State* (1988), Ind.App., 525 N.E.2d 619, 625. No reasonable person of ordinary intelligence would have difficulty determining that failure to give necessary or proper medical care is proscribed by the statute. Therefore, we do not find the neglect statute is vague.

■ Kerlin also contends the statute is overbroad as applied to him. Although a statute may not be vague, it may be overbroad. *VanSant v. State* (1988), Ind.App., 523 N.E.2d 229, 233. "An overbreadth challenge asserts that the statute is not drawn in sufficiently narrow terms and foreseeably prohibits legitimate conduct." *Id.* (citations omitted). Kerlin argues generally that the statute is overbroad. Kerlin presents arguments that application of the statute to health and medical care professionals would result in reluctance by the medical profession to provide care to nursing home residents. Such arguments are better addressed to the legislature and do not constitute sufficient argument to over-

2. Kerlin's contention that the State is attempting to criminalize allegedly negligent medical treatment which the legislature has designated to be dealt with under the civil malpractice laws is not an issue for us to review on interlocutory appeal.

come the presumption that the statute is constitutional.

Kerlin fails to establish that the statute "forbids conduct in terms so vague that persons of ordinary intelligence must necessarily guess at the statute's meaning and differ as to its application" or that the statute is overbroad. *See VanSant*, 523 N.E.2d at 233.

*Issue Two*

▆▆▆ Kerlin argues the indictments fail to advise him of the particular crime. Usually, if an information tracks the language of the statute defining the offense, the information is sufficient. *Malone v. State* (1989), Ind.App., 547 N.E.2d 1101, 1103, *trans. denied.* Absence of detail in an information is fatal only if the phraseology misleads the defendant or fails to give him notice of the charges against him. *Cash v. State* (1990), Ind., 557 N.E.2d 1023, 1025.

▆▆▆ The indictments by which the grand jury charged Kerlin stated that he,:

"having the care of a dependent, whether assumed voluntarily or because of a legal obligation, knowingly or intentionally placed the dependent, to-wit; Willard Flory in a situation that endangered his life or health, thereby committing Neglect of a Dependent...."

Record at 6. The Meredith indictment contained the same language. The language of the indictments closely track the language of the statute. Kerlin complains, though, that the indictments do not state the facts and circumstances which endangered the victims and require speculation as to what facts constitute the proscribed conduct by Kerlin. This same argument regarding the neglect statute failed in *Davis v. State* (1985), Ind.App., 476 N.E.2d 127, 132, *trans. denied,* (citations omitted). As in *Davis*, both indictments specified the date and place of the alleged offense and identified Kerlin and the victims by name in language paralleling the statute. The indictments contained the statutory lan-

guage specifying the particular act of "placing the dependent in a situation endangering his life or health". When the statutory language enumerates the specific acts which constitute the crime, an indictment paralleling the words of the statute is sufficient. *Davis*, 476 N.E.2d at 132. Further description of the injury or methods employed in committing the crime are unnecessary. *Id.* We find both indictments are sufficient to inform Kerlin of the charges against him.[3]

Although Kerlin argues Flory and Meredith were not his "dependents" and that he did not "place" them in dangerous situations, such issues are questions of fact which we may not decide.

Affirmed.

ROBERTSON, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent.

The indictments are constitutionally deficient and cannot stand. Moreover, a criminal prosecution for neglect of a dependent cannot proceed on these facts. Before discussing those issues, however, I must first express my disagreement with the majority's procedural disposition of the Meredith indictment.

## THE MEREDITH INDICTMENT

This court accepted this interlocutory appeal on January 4, 1991, assuming jurisdiction as of that date. Normally, however, the appellate tribunal does not acquire jurisdiction until the record of proceedings has been filed with the Clerk of the Supreme and Appellate Courts pursuant to Ind. Appellate Rule 3(A). Upon filing of the record, the trial court has no further jurisdiction. *Taylor v. State* (1979), 181 Ind. App. 392, 391 N.E.2d 1182. It may well be that, as a constitutionally empowered body, this court can acquire jurisdiction prior to

---

**3.** We believe the dissent confuses sufficiency of the evidence to prove the charge with sufficiency of the allegations in the indictment. Here, we are concerned only with the sufficiency of the allegations in the indictment.

the time stated by App.R. 3(A), *see Constanzi v. Ryan* (1977), 174 Ind.App. 454, 368 N.E.2d 12 (Court of Appeals has inherent power to grant time in excess of that allowed by appellate rules for perfection of appeal). I believe that to do so in this case, however, is a mistake.

Here, the State moved to dismiss the Meredith indictment before January 4, 1991, and the trial court granted the motion before the record of proceedings was filed on February 4, 1991. Under App.R. 3(A), the trial court clearly had jurisdiction to grant the motion, and it is solely our early acquisition of jurisdiction which calls the trial court's authority into question. If we had waited until the record of proceedings was filed, the Meredith indictment would never have been before us. As the situation stands now, the majority has ruled on a moot issue. Worse than that needless effort, however, the majority's decision that the Meredith indictment was proper may well lead Dr. Kerlin into a unique problem. Since the majority has effectively decided the trial court could not grant the State's motion to dismiss the Meredith indictment, its simultaneous ruling the indictment was appropriate raises the likelihood the State will withdraw its motion to dismiss, leaving Dr. Kerlin answerable to two counts when, prior to today's decision, he was answerable to only one.

I wish to point out, however, that I believe we should have viewed the Meredith indictment as moot even if we had waited until the record of proceedings was filed to acquire jurisdiction. The situation before us is virtually unheard of: a criminal defendant files a motion to dismiss; the trial court denies the motion and certifies its order for interlocutory appeal; the Court of Appeals acquires jurisdiction; the State moves to dismiss; the trial court grants the motion. In such a case, I can see no reason not to allow an exception to the rule that

the trial court's jurisdiction terminates when ours commences.

One of the reasons we view jurisdiction in a formalistic manner is to avoid "the confusing and awkward situation of having the trial and appellate courts simultaneously reviewing the correctness of the judgment." *Coulson v. Indiana & Michigan Elec. Co.* (1984), Ind., 471 N.E.2d 278, 279 (quoting *Donahue v. Watson* (1981), Ind. App., 413 N.E.2d 974, 976). That concern is not present here: by allowing the trial court to act, we avoid the review. The trial court's decision to grant a motion to dismiss in such a case does not change what we must review, thereby requiring additional briefing; it instead terminates the need for review.[1] "The jurisdictional rule also prevents the prevailing party from having to bear the cost of defending its judgment in two separate courts at the same time, and safeguards against the waste of appellate judicial resources." *Coulson, supra,* at 279. Again, these concerns are not present here. The State, which is the prevailing party, has not had to bear any additional costs except those of its own choosing, i.e., the costs of the motion to dismiss. As for the potential waste of appellate resources caused by simultaneous jurisdiction, the length of this discussion should amply demonstrate that adherence to the rule is no guarantee appellate resources will be spared.

I would allow trial courts to retain jurisdiction in cases like this for the limited purpose of entertaining a State authored motion to dismiss during the pendency of an interlocutory appeal, and would, therefore, regard the trial court's dismissal of the Meredith indictment as valid and any discussion of that indictment in this court as moot. Nonetheless, because the majority has discussed the merits of the Meredith indictment, I am required to do likewise.

---

1. I am not unaware of the machinations engaged in by the parties to a criminal prosecution. With those machinations in mind, I would require trial courts to grant State authored motions to dismiss during the pendency of an interlocutory appeal only with prejudice.

This would prevent a Prosecuting Attorney with a losing case from unfairly receiving the benefits of mootness, i.e., the prosecutor could not avoid our review of the charges by moving for the charges' dismissal only to reinstate the charges after we dismiss the appeal.

## THE INDICTMENTS

It is hornbook constitutional law that an indictment or information must be drafted with sufficient clarity that the accused may "anticipate the proof which would be adduced against him so he could meet it." *Bickel v. State* (1978), 176 Ind.App. 342, 375 N.E.2d 274, 275 (citations omitted). This requirement also serves to assure the defendant he will not be subjected to jeopardy twice for the same offense. *McCune v. State* (1986), Ind., 491 N.E.2d 993, 994; *Johnson v. State* (1986), Ind., 490 N.E.2d 333, 335. *See also* U.S. CONST. amend. V; IND.CONST. art. I, § 13.

An indictment, of course, must set forth the essential elements of the crime charged as stated in the relevant statute. As I will discuss further below, there are two essential elements in prosecutions for neglect of a dependent: the duty of care owed by the defendant, and the knowing or intentional placement of the dependent in a life or health threatening situation. IND.CODE 35–46–1–4. Relying on *Davis v. State* (1985), Ind.App., 476 N.E.2d 127, *trans. denied,* the majority holds the indictments here satisfy constitutional muster by sufficiently setting forth the essential elements of criminal neglect. I disagree.

In *Davis,* the defendants were the natural parents of the neglected dependent, their several-hours-old child whom they abandoned on the side of a back road. In pertinent part, the identical indictments read:

> [the defendant], then having the care, custody or control of an infant male child, a dependent, did knowingly place such child in a situation that did endanger his health.

*Id.* at 131. The defendants in *Davis* could not but know exactly the act of neglect with which they were charged. Blood tests had revealed they were the child's parents, and the facts indicate the date the child was discovered coincided with the date Mrs. Davis gave birth. No person could have failed to know that the act which placed the child in a situation dangerous to his health, and which was charged in the indictment, was the act of leaving the new born babe on the road. The situation here is wholly different, even though the indictments, quoted by the majority at page 448, are virtually identical to the indictment in *Davis.* Here, the indictments cannot stand because they fail to give Dr. Kerlin notice either of his relationship with Mrs. Meredith and Mr. Flory as victims, or of the act or acts by which he placed them in a health or life threatening situation.

### A. *Dependent Status*

The first element of liability under IND. CODE 35–46–1–4 is that the defendant have "the care of a dependent, whether assumed voluntarily or because of a legal obligation." *Id.* In proceedings under IND.CODE 35–46–1, a dependent is "(1) an unemancipated person who is under eighteen (18) years of age; or (2) a person of any age who is mentally or physically disabled." IND.CODE 35–46–1–1. Patients in health care facilities have been held to be dependents in prosecutions under IND. CODE 35–46–1–4. *State v. Monticello Developers, Inc.* (1987), Ind.App., 502 N.E.2d 927, *aff'd in part,* Ind., 515 N.E.2d 1070, *reh'g. granted,* 527 N.E.2d 1111. Here, the facts reveal that Mrs. Meredith and Mr. Flory were physically disabled. Their status as dependents under the terms of IND. CODE 35–46–1–1, however, does not answer the critical question "dependents of whom?" To hold Dr. Kerlin criminally liable, there must be some duty of care under the statute. Without such a duty, he is not liable, and without an allegation of such a duty, he cannot answer the charges. As Professor Jerome Hall stated decades ago, "the penal law .. require[s] that the defendant know the facts to which his duty refers." J. HALL, GENERAL PRINCIPLES OF CRIMINAL LAW (2d. ed. 1960).

I am not prepared to state that nursing home residents are by definition the dependents of the nursing home's medical director, and that is exactly what the State wishes us to hold. The State and the majority would differ with my assessment of the State's argument. Nonetheless, without some facts alleged and set forth in the indictment purporting to show a duty of care on Dr. Kerlin's part beyond that cre-

ated merely by virtue of his position as the nursing home's medical director, there can be no liability under IND.CODE 35–46–1–4 on either the Meredith or the Flory indictment.

## B. *Placement*

The second element of liability under IND.CODE 35–46–1–4 requires that the defendant knowingly or intentionally place the dependent in a life or health threatening situation. *Id.; State v. Downey* (1985), Ind., 476 N.E.2d 121, 123. There must be some type of *actus reus. See Davis, supra,* (defendants abandoned their newborn infant on the side of a road). As with the question of Dr. Kerlin's duty of care, however, the State here has failed to allege, either within or beyond the indictment, the act or acts by Dr. Kerlin constituting a placement of Mrs. Meredith or Mr. Flory into a health or life threatening situation.[2]

In *Fisher v. State* (1990), Ind.App., 548 N.E.2d 1177, the defendant had given shelter to the victim infant and the infant's mother, allowing them to stay in his home while they sought a permanent residence. The mother beat the child to death, and the defendant was convicted of neglect of a dependent. We reversed the conviction because there was no evidence the defendant had placed the victim in the situation, i.e., the victim's relationship with his mother, which ultimately took the victim's life. So it is here.

Dr. Kerlin is the medical director of a nursing home. Mrs. Meredith, an 86 year old resident of the nursing home recovering from a broken hip, developed gangrene in the leg with the broken hip in the week and a half she was under observation and treatment at the nursing home.[3] The facts indicate the only cures for gangrene are drug therapy to increase circulation and amputation. After a week and a half, Mrs. Meredith was transferred to a hospital where she could receive more intensive care. Both Dr. Kerlin and the hospital physicians, however, rejected drug therapy as inappropriate for a patient with her profile, and her family decided against the surgical remedy of amputation. In a few weeks, Mrs. Meredith died from the gangrene.

The life threatening situation into which Mrs. Meredith was placed was the development of gangrene and her family's decision not to amputate. Dr. Kerlin was responsible for neither of these developments. There was no *actus reus* constituting a placement. There was only an elderly nursing home resident with fractured bones who developed gangrene and died. If the State is allowed to proceed with this prosecution, physicians in situations similar to Dr. Kerlin's will be faced with a devil's alternative: order amputation over the family's objections and face at least civil, and perhaps criminal, liability, or do as Dr. Kerlin did—transfer the patient to a hospital and await indictment.[4]

As for Mr. Flory, the facts supporting a placement are similarly nonexistent. Mr. Flory suffered from conjunctivitis, which Dr. Kerlin treated. When Mr. Flory was transferred to the hospital, his eyes were matted shut. Simply put, conjunctivitis causes exudates, which then dry and mat eyes shut. *See* 6 LAWYER'S MEDICAL CYCLOPEDIA § 39.19c (rev. ed. 1977). The indictment does not allege how it was

---

**2.** Failure to seek medical care for a dependent may be a sufficient placement to constitute criminal neglect. *Armour v. State* (1985), Ind., 479 N.E.2d 1294. I do not see how failure to seek medical care can be the charged act here, however, because both Mrs. Meredith and Mr. Flory received medical care from Dr. Kerlin.

**3.** Gangrene is a recurring complication of fractures. 2 LAWYER'S MEDICAL CYCLOPEDIA §§ 9A.31, 9A.35 (rev. ed. 1979).

**4.** The State's over-zealousness is underscored by the fact the dates of the alleged crime in the

Meredith indictment run from July 26, 1988 to August 29, 1988. Mrs. Meredith was admitted to the nursing home on July 26, and she died on August 29. She was transferred to the hospital, however, on August 6, and from that date until her death, Dr. Kerlin was not involved in her care. For criminal liability to arise, "criminal intent must unite with an overt act," *Gebhard v. State* (1985), Ind.App., 484 N.E.2d 45, 48, and Dr. Kerlin was not in a position to commit any overt acts after Mrs. Meredith was transferred to the hospital.

Dr. Kerlin's acts, rather than the disease, which placed Mr. Flory in the situation causing the matting of the eyes. Mr. Flory was also incontinent, and fouled his shoes as a result. After his family brought him new shoes and threw the old shoes out of Mr. Flory's room, Mr. Flory began wearing the old shoes again, and when he was transferred to the hospital, a maggot was found under his toenail. It is common knowledge that flies breed in excrement and waste, and when Mr. Flory started wearing the old shoes again, he placed himself in a situation of exposure to flies and maggots. Again, neither the indictment nor any other allegation charges that the nursing home was generally unsanitary, that is to say, in a life or health threatening situation.

As a final remark, it is of course the law that an indictment usually is sufficient if it parallels the words of the relevant statute, *Cash v. State* (1990), Ind., 557 N.E.2d 1023, 1025, and indictments for neglect of a dependent come within the ambit of the rule. *Davis, supra.* Nonetheless, both this court and our supreme court have handed down a number of decisions involving challenges to the constitutionality of the neglect statute and indictments brought under it. *Monticello, supra; Downey, supra; Fisher, supra; Davis, supra; Worthington v. State* (1980), Ind.App., 409 N.E.2d 1261. Given these circumstances, it appears to me the better practice for prosecutors is to draft neglect indictments and informations with as much precision and detail as possible to reduce future challenges, and I suggest the indictment in *Fisher, supra,* and the information in *Monticello, supra,* as examples to be followed.