**Debra Jo HARRISON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–9402–CR–101.

Court of Appeals of Indiana,
Second District.

Dec. 22, 1994.

William D. McCarty, Anderson, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Debra Jo Harrison appeals her convictions for two counts of Neglect of a Dependent,[1] both class D felonies. Harrison argues that the verdicts are not supported by the evidence, that the three-year sentence imposed was manifestly unreasonable and that the trial judge failed to identify any aggravating circumstances to support the sentence.

We affirm.

The facts favorable to the jury's verdict are that sometime during the summer of 1989, Harrison had the care of T.W., a twelve year old female, D.L., an eleven year old female, and Holly, an infant in a stroller. None of the girls were her children or related to her. Harrison took the three girls to the Gobel Nursing Home to visit Jeff Kerns, who had suffered a severe head injury in an automobile accident. Kerns had a reputation of exposing and touching himself in public and touching and rubbing against women.

Upon arriving at the nursing home, Harrison and the three girls entered Kerns's room, which contained two twin beds. T.W. testified at trial that after entering the room, she and D.L. sat on one twin bed, while Harrison and Kerns lay on the other. Harrison and Kerns kissed, and Kerns asked Harrison to engage in fellatio. Harrison replied that she did not want to, but that the two older girls would. When T.W. stated that she neither wanted nor knew how to perform oral sex, Harrison answered that she would demonstrate. Harrison helped Kerns lower his pants to expose his penis. Harrison next showed the girls how to perform oral sex by using her finger as a model. Harrison laughed while the girls engaged in fellatio with Kerns, and told them afterward not to tell anyone. Harrison, however, testified that she never directed the girls to engage in oral sex. According to Harrison's testimony, Kerns asked Harrison to buy him a pop soon after they arrived. Harrison testified that she walked down the hall to the pop machine and stopped to talk with some patients on her way back to Kerns's room. When Harrison returned to the room, she witnessed D.L. kneeling alongside Kerns's bed licking Kerns's penis while T.W. was kneeling on the opposite side of the bed. Harrison testified that she was shocked and ordered the girls to stop. When D.L. answered that she had engaged in oral sex before, Harrison declared that she did not care and that D.L. was not going to engage in it while with her. Harrison then grabbed Holly's stroller and the girls and immediately left the nursing home.

The State charged Harrison with two counts of vicarious sexual gratification, class B felonies, and two counts of neglect of a dependent, class D felonies. A jury trial was held and the jury returned its verdicts, acquitting Harrison on the two counts of vicarious sexual gratification and finding her guilty on the two counts of neglect of a dependent. At the sentencing hearing, the trial judge sentenced Harrison to three years' imprisonment on each count of neglect of a dependent, to be served concurrently. Harrison appeals the convictions and the sentencing order and presents four issues, which we consolidate into three:

1. Did sufficient evidence exist for the jury to convict Harrison of neglect of a dependent?

2. Did the sentencing court improperly find aggravating circumstances?

---

1. Ind.Code 35–46–1–4.

3. Did the sentencing court impose a manifestly unreasonable sentence?

### 1.

Harrison claims that her conviction of neglect of a dependent is not supported by sufficient evidence. When reviewing for sufficiency of the evidence, this court will neither reweigh the evidence nor judge the credibility of the witnesses. We will consider the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. We will affirm a conviction if it is supported by substantial evidence of probative value. *Fisher v. State* (1990), Ind.App., 548 N.E.2d 1177.

The first part of Harrison's argument is that the State failed to present sufficient evidence that her conduct threatened either the girls' health or life. IC 35–46–1–4 provides in relevant part:

"(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that may endanger his life or health;

.    .    .    .    .

commits neglect of a dependent, a Class D felony."

Harrison claims that although the children's moral well-being might have been harmed, such impairments do not constitute injuries to life or health. Harrison refers to a precursor child neglect statute, discussed in *Ware v. State* (1982), Ind.App., 441 N.E.2d 20, which stated that child neglect occurs upon one's "failure to do or permit to be done any act necessary for the child's physical or *moral well-being....* Ind.Ann.Stat. § 10–813(b) (1956)." *Id.* at 22 (emphasis supplied). Harrison contends that the omission of the phrase "moral well-being" in the present statute "strongly indicates a legislative intent that conduct affecting the moral welfare of children no longer constitutes neglect." Appellant's Brief at 10, 11. Harrison further argues that the term "health" as utilized in the present statute does not encompass moral well-being.

When construing a statute, we must give words and phrases their plain, ordinary and usual meaning, unless a contrary purpose is clearly shown by the statute itself. *Jacobs v. State* (1994), Ind.App., 640 N.E.2d 61. Although penal statutes must be strictly construed against the State, a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the legislature's expressed intent. *Baird v. State* (1992), Ind., 604 N.E.2d 1170, *cert. denied* (1993), — U.S. —, 114 S.Ct. 255, 126 L.Ed.2d 208. *Black's Law Dictionary*, sixth edition, defines health as the "state of being hale, sound, or whole in body, mind or soul, well being." *Webster's Ninth New Collegiate Dictionary* defines health as "the condition of being sound in body, mind, or spirit". The definitions' references to "body" and "mind" lead us to the conclusion that the ordinary meaning of health is not limited to one's physical state, but includes an individual's psychological, mental and emotional status. Additionally, the purpose of the neglect statute is to protect a dependent from the failure of those entrusted with his or her care to take the action necessary to ensure the dependent is safe. If the neglect statute is narrowly read to protect dependents only from physical harm, a caregiver may have no duty to protect a child from sexual abuse that does not result in bruises, scrapes or other physical injuries. We therefore conclude the neglect statute applies to the psychological, mental and emotional injuries which are inflicted upon children by deviate conduct.

In the second part of Harrison's sufficiency argument, she contends that insufficient evidence exists to prove that she knowingly placed the children in a situation endangering their life or health. She specifically argues that she lacked knowledge of Kerns's deviate tendencies.

The jury convicted Harrison of neglect of a dependent and acquitted Harrison on two counts of vicarious sexual gratification. The jury was instructed that in order to convict Harrison of vicarious sexual gratification as a C felony:

"THE ACCUSED MUST:

1. Be eighteen (18) years of age or older, and
2. knowingly or intentionally,
3. directs, aids, induces or causes, [sic]
4. a child under the age of sixteen (16), to
5. engage in deviate sexual conduct,
6. with another person."

*Record* at 49. Harrison contends that she was acquitted because the jury could not find that she directed or caused the girls to engage in deviate conduct with Kerns. Thus, Harrison argues, the jury believed her testimony and not that of T.W. or D.L.. Harrison urges that we also look only to Harrison's testimony in determining whether sufficient evidence was presented.

Upon review for sufficiency of the evidence, we will consider the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Fisher, supra.* We conclude that sufficient evidence was presented to convict Harrison of neglect of a dependent regardless of whom the jury believed. Even if the jury had disregarded T.W. and D.L.'s testimony, the jury could have reasonably found that Harrison knowingly placed the girls in a situation that threatened their life or health.

The definition of knowledge in neglect cases incorporates a subjective standard. The relevant question is whether Harrison was subjectively aware of a high probability that she placed T.W. and D.L. in a situation involving an actual and appreciable danger to the young girls. *Sample v. State* (1992), Ind.App., 601 N.E.2d 457. Although Harrison testified that she was unaware of Kerns's proclivities, a statement was admitted into evidence which was taken by Det. Koons of the Anderson Police Department and signed by Harrison, wherein Harrison stated, in part:

"Jeff had a habit of always pulling himself out and playing with it. Some of the times that I visited with Jeff, he would do that in front of the girls. [T.W.] and [D.L.] were about 12 or 13 years old, and they seemed to like what Jeff was doing. A couple of times where I visited with these girls, they would do sexual things with Jeff.... A

couple of times when this happened in his room, Jeff would grab my hand and force it to touch his penis, but I always pulled back and resist [sic] what he was wanting.... Jeff called his penis "Jeffro" and was always wanting someone to go down on it."

*Record* at 563. The statement establishes that on occasions prior to the incident in question, Kerns had exposed and manipulated himself in front of Harrison and the girls, Kerns had forced Harrison to touch him and Harrison knew that Kerns frequently asked women to engage in oral sex. The jury believed Harrison's statement and reasonably concluded that Harrison had knowledge of Kerns's propensities to engage in deviate behavior. Harrison's solicitation that we examine T.W. and D.L.'s testimony asserting that Kerns had never behaved inappropriately around them prior to the incident is a mere request to reweigh evidence and judge witness credibility, which we will not do. *Fisher, supra.*

2.

Harrison also contends that the trial court improperly found aggravating factors at the sentencing hearing, rendering her sentence manifestly unreasonable. The sentencing range identified in I.C. 35–50–2–7 is as follows:

"A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances. In addition, he may be fined not more than ten thousand dollars ($10,000)."

The court sentenced Harrison to three years on each conviction, to be served concurrently.

I.C. 35–38–1–7.1 sets out the factors which shall be considered by a sentencing judge and those which may be considered by a sentencing judge. Among the factors that may be considered are the aggravating and mitigating circumstances listed in the statute, although the list is not exhaustive.

■ Harrison argues that the sentencing judge improperly cited as an aggravating circumstance Harrison's neglectful conduct in taking the children to the nursing home to visit Kerns. Harrison is correct in that a fact which comprises a material element of a crime may not also constitute an aggravating circumstance. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198. This does not preclude the trial court, however, from considering the manner in which the crime was committed as an aggravating circumstance. *Limp v. State* (1983), Ind., 457 N.E.2d 189. In the present case, the transcript of the sentencing hearing provides this court with an adequate discussion of aggravating circumstances which are distinct from the elements of neglect of a dependent.

At the sentencing hearing, the judge stated:

"She put these children in a, in a situation that was similar to a burning building.... Now your defense is or at least part of your defense is well gee this is out of control. They were sexually mature but that's an adult's responsibility.... If that's the way they were, then you have extra responsibility. You have extra care that you have to take with these kids. Not less. You have to take more.... Why in the world any mature women [sic] would take a baby down there to that sexual hell hole is beyond my comprehension.... Those girls if it's what she says, those girls were sexually active, they had no business being down there. The last place in the world they needed to be was with this creep wierdo [sic] who hit on women.... It's even worse, once you get them down there, according to your version, you leave the room. You leave them alone with this admitted weirdo pervert.... Everybody knew about his propensities, his proclivities to act inappropriately sexually around girls and women, including you and what do you do? You run off to get a Coke for Pete's sake or a pop or a soda and leave two (2) young girls in there with this room [sic] alone and a baby of all things. No that's not a mitigating circumstance. That's an aggravating circumstance...."

*Record* at 1199–1206. In *Limp, supra,* at 191, the Indiana Supreme Court concluded that the trial court properly relied on the manner in which the offense was committed when it cited that the defendant "lured" the young victim into the bathroom and caused her to "suck his penis until climax." In the present case, the sentencing judge pointed to the facts that a baby was in the room during the incident and that Harrison believed the girls to be sexually mature, yet still brought them to visit Kerns. Neither factor is an element of the crime of Neglect of a Dependent. Each, however, involves the manner in which the crime was carried out. These are proper aggravating circumstances.

3.

■ Finally, Harrison argues that her three-year sentence is manifestly unreasonable in light of the fact that the incident was a short-lived, isolated occurrence and that several mitigating factors were present. A reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the accused. App.Rule 17(B)(1). A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed. App.Rule 17(B)(2).

■ In Harrison's case, the court examined both the nature of the offense and the character of the accused in weighing the aggravating and mitigating circumstances. The court found Harrison's lack of a criminal history and her limited mental capacity to be mitigating circumstances and the manner in which she committed the offense to be an aggravating circumstance. The sentencing court balanced these factors, adding one-and-one-half years to each count for aggravating circumstances and ordering that the terms be served concurrently due to the mitigating circumstance of Harrison's limited capacity. *Record* at 1212. A trial court may increase or decrease a basic sentence for a crime at its discretion depending upon the aggravating or mitigating circumstances. A trial court need only list one aggravating circum-

stance to support an enhanced sentence. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370.

■ Harrison argues that the sentencing court failed to take all of the mitigating factors into account, rendering the sentence manifestly unreasonable. A trial court is not required, however, to weigh or credit the mitigating evidence the way an appellant suggests it should be credited or weighed. *Id.* In Harrison's case, the sentencing court found that the mitigating circumstances were significant enough to justify concurrent sentences. The court was not required to subtract one year from each count. Furthermore, as stated in our discussion, the court properly found aggravating circumstances, and, according to I.C. 35–50–2–7, was entitled to enhance each sentence by one-and-one-half years. We conclude that the sentencing court properly balanced the aggravating and mitigating circumstances. The sentence was not manifestly unreasonable.

Judgment affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.