## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 25 2015, 9:54 am
CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Tia R. Brewer
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Jonathon Hug,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 25, 2015

Court of Appeals Case No.
27A05-1410-CR-478

Appeal from the Grant Circuit Court

The Honorable Mark E. Spitzer, Judge

Cause No. 27C01-1208-FC-151

---

**Najam, Judge.**

## Statement of the Case

[1] Jonathon Hug appeals his five convictions for neglect of a dependent, each as a Class C felony, following a jury trial. Hug raises a single issue for our review,

namely, whether the State presented sufficient evidence to support his convictions. We affirm.

## Facts and Procedural History

In May of 2012, Hug moved in with K.S., his significant other, and her five children. The five children, N.S., Z.S., H.S., J.S., and C.S. were, respectively, six-months old, one-year old, three-years old, four-years old, and six-years old. K.S. became pregnant with Hug's child around that same time.

On August 3, 2012, the Indiana Department of Child Services ("DCS") received a report of child abuse or neglect at K.S.'s home. DCS family case managers Kelly Scott and Andrea Wilson responded to the report. Upon arriving at K.S.'s home, Scott noticed "an overwhelming stench coming from the home as well as cockroaches" both on the exterior of the home and throughout the interior of the home. Tr. at 29. Scott contacted local police, and, upon their arrival, she entered the home.

Inside, Scott

> noticed the overwhelming amount of bugs, insects. Whether it [was] flies, gnats, cockroaches, and things that maybe I wouldn't even know what they were. I mean, it was so bad because it was August that you walked in and you felt like they were sticking to you. When you walked, they either came onto your shoes and pants legs or they would just scatter on the floor.

* * *

And then . . . [Z.S.] . . . came walking out . . . with cuts, bites, redness all over her. Her eyes, her arms, I mean, everywhere it looked like she just had sores or bites all over here.

* * *

Immediately I . . . looked to the left and I saw an infant [N.S.] in a swing and unfortunately one of the parts of this job that I do is I work fatalities and the condition that this little boy was in when I saw him I wasn't for sure if I was walking in on a fatality . . . . I mean, he was grey, not . . . moving. His head was slumped awkwardly to the side to where his chin just laid completely down onto his chest. His head looked oversized. He had cockroaches crawling on his face. He ha[d] flies stuck to a wound that was on his head just feeding right there on his . . . wound . . . .

* * *

After I made sure that [N.S.] was breathing and had a pulse, we checked on the other child [H.S.] who is severely handicapped and who was laying in this crib . . . .

* * *

[H.S.] was laying in his crib and cockroaches were all over his bed, his blanket, himself. Flies were just almost like pictures you see of horses that would have flies that attack their eyeballs, just crawling all over his eyes and there were cockroaches trying to get into his ears. He was not moving. His eyes were open. He could not speak and he's non-mobile.

Tr. at 33-35. Scott immediately requested paramedics to remove the children from the home.

[5] At the hospital, all five children were found to have insect bites and open sores. Medical personnel discovered maggots inside H.S.'s diaper and coming out of his anus. A maggot was living in N.S.'s armpit. Although N.S. was six-months old, "developmentally . . . he acted very much like a two[-]month old. He couldn't pick his head up. . . . [The] back of his head was very flattened as if he had been laying on that a lot." *Id.* at 70-71. J.S. had "a large wound" from where he had cut himself "on a piece of glass." *Id.* at 43. And Z.S. had sores all over, but especially in her vaginal area, which were oozing pus.

[6] On August 7, the State charged Hug with five counts of neglect of a dependent, each as a Class C felony. At his ensuing jury trial, six-year-old C.S. testified that Hug lived at their residence; that Hug cooked food for the children; that Hug would help change diapers; that Hug would help feed H.S., who needed special help and attention due to his disabilities; and that Hug would discipline C.S., which included "whoop[ing]" C.S., placing C.S. "in the corner," and making C.S. pick up maggots off the kitchen floor. *Id.* at 139. C.S. also testified that Hug would help C.S. run the bath water.

[7] The jury found Hug guilty on each of the five charges, as well as for being an habitual offender. The court entered its judgment of conviction and sentence accordingly.[1] This appeal ensued.

## Discussion and Decision

[8] Hug asserts that the State failed to present sufficient evidence to support his five convictions for neglect of a dependent, each as a Class C felony. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

[9] Here, Hug's only argument on appeal is that the State failed to present sufficient evidence that he had voluntarily assumed care over the five children. Pursuant to Indiana Code Section 35-46-1-4 (2012), a person "having the care of a dependent, whether assumed voluntarily or because of a legal obligation," who knowingly or intentionally places the dependent in a situation that endangers the dependent's life or health that results in bodily injury, commits Class C felony neglect of a dependent. We have recognized that paying for food and

---

[1] Hug does not appeal his habitual offender statutes or his twenty-year, executed sentence.

diapers and performing household duties such as cooking and cleaning is sufficient to demonstrate that a defendant has voluntarily assumed care over a dependent. *Fisher v. State*, 548 N.E.2d 1177, 1179 (Ind. Ct. App. 1990).

[10] The State presented sufficient evidence to demonstrate that Hug voluntarily assumed care over the five children. At Hug's jury trial, six-year-old C.S. testified that Hug lived with the five children at their residence; that Hug cooked food for the children; that Hug would help change diapers; that Hug would help feed H.S., who needed special help and attention due to his disabilities; that Hug would discipline C.S.; and that Hug would help C.S. run bath water. Tr. at 139. The evidence shows that Hug was not a mere resident or occupant of the house but was also a caregiver for the children. As such, it was reasonable for the jury to infer from the evidence that Hug had voluntarily assumed care over the five children, *see Fisher*, 548 N.E.2d at 1179, and Hug's arguments on appeal simply amount to a request for this court to reweigh the evidence, which we cannot do. We affirm Hug's convictions.

[11] Affirmed.

Mathias, J., and Bradford, J. concur.